IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DOUGLAS HUGHES, JR.,

           Plaintiff,

v.

MICHAEL J. ASTRUE,

           Defendant.

Civil No. 3:11-cv-00462-PK

**OPINION AND ORDER**

PAPAK, Magistrate Judge:

    Plaintiff Douglas Hughes ("Hughes"), seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") payments under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). All parties have consented to entry of final judgment by a Magistrate Judge in accordance

1 - OPINION AND ORDER

with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c) (Docket # 12). The Commissioner's motion to remand is granted for the reasons that follow.

## BACKGROUND

Born in 1953 (Tr. 108), Mr. Hughes alleges disability due to a December 10, 2005, aortic aneurysm and subsequent open-heart surgery. Tr. 108. The Commissioner denied Mr. Hughes' application initially and upon reconsideration (Tr. 74-81), and an Administrative Law Judge ("ALJ") held a hearing on July 8, 2009. Tr. 25-73. The ALJ found Mr. Hughes disabled as of June 26, 2008, but not disabled before that date. Tr. 23-24. The Appeals Council accepted additional evidence into the record, but denied review of the matter on February 23, 2011. Tr. 3-6. Mr. Hughes challenges the ALJ's finding that he was not disabled prior to June 26, 2008.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations. If it does, the claimant is disabled. 20

C.F.R. § 404.1520(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p.

At step four, the ALJ uses this information to determine if the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, he is disabled. 20 C.F.R. § 404.1520(a)(4)(v); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 U.S. 137, 146 n.5; *Tackett*, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 404.1520(g); *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ found Mr. Hughes' hypertension and "status post ruptured thoracic aneurysm" severe at step two in the sequential proceedings. Tr. 18. The ALJ found that these impairments did

not meet or equal a listed impairment at step three, and found that Mr. Hughes retained the RFC to perform light work, "except he can not do any climbing other than the occasional climbing of stairs." Tr. 19. At step four, the ALJ found that Mr. Hughes could not perform his past relevant work. Tr. 22.

The ALJ found that Mr. Hughes became an "individual of advanced age" as of June 26, 2008. *Id.* Prior to this date, the ALJ found Mr. Hughes able to perform work in the national economy, and therefore not disabled. Tr. 23. After June 26, 2008, the ALJ found that Mr. Hughes could not perform work in the national economy, and therefore disabled as of that date. Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray*, 554 F.3d at 1222, *quoting Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The reviewing court, however, may not substitute its judgment for that of the Commissioner. *Id.*, *citing Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This court, however, may not affirm the ALJ's

findings based upon reasoning the ALJ did not express. *Bray*, 554 F.3d at 1225-26, *citing SEC v. Chenery Corp.*, 332 US 194, 196 (1947); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

Mr. Hughes challenges the ALJ's findings regarding his credibility and that of a lay witness. He also asserts that the ALJ erroneously evaluated the medical evidence. The Commissioner asserts that the ALJ's findings regarding Mr. Hughes' testimony and the opinion of treating physician Michael Booker, M.D., should be affirmed, but concedes error regarding the ALJ's evaluation of the lay testimony and his findings at step three in the sequential proceedings. Because the ALJ found Mr. Hughes disabled as of June 26, 2008, the discussion below necessarily pertains to the period before that date.

### I.  Credibility

Mr. Hughes asserts that the ALJ erroneously evaluated his credibility.

#### A.  Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter*, 504 F.3d at 1036, *citing Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*,

5 - OPINION AND ORDER

50 F.3d 748, 750 (9th Cir. 1995), *citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing the claimant's inconsistent statements regarding symptoms. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B. Analysis

#### 1. Activities of Daily Living

Mr. Hughes asserts that the ALJ erroneously cited his activities of daily living. Pl.'s Opening Br. 11. The ALJ noted that Mr. Hughes volunteers two hours per week at a grocery store, goes to the gym and lifts weights twice a week (Tr. 20), rides a bike two and one half miles, and lifts up to forty-five pounds at the gym. Tr. 21.

The record supports the ALJ's findings. Mr. Hughes testified that he volunteers at a grocery co-op, that he has not missed shifts due to fatigue, but his two hour shift feels like a full day shift. Tr. 35, 40. He also testified that he bench-presses forty-five pounds at the gym twice a week. Tr. 39-40. He also stated he can walk a mile at a "slower pace than before." Tr. 52. After walking a mile in the morning, he may go to gym and ride a bike and lift weights. Tr. 61. He can ride his bike about two and a half miles, twice a week. Tr. 61-62.

Mr. Hughes also completed a "function report" on October 27, 2006. Tr. 197-204. Here he

stated that his daily activities include preparing meals, exercising, shopping, visiting friends, playing drums, reading, and watching television. Tr. 197, 201. He shops daily for twenty to thirty minutes (Tr. 200), and can walk nearly a mile. Tr. 202. Mr. Hughes endorsed limitations in all exertional and nonexertional domains such as lifting, squatting, and concentration, because he has lost strength and endurance. Tr. 202.

The ALJ credibility analysis may cite a claimant's activities that are inconsistent with the claimant's alleged symptoms and limitations. *Lingenfelter*, 504 F.3d at 1040. This reasoning need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, __ F.3d __, __ (9th Cir. Apr. 2, 2012), *available at* 2012 WL 1071637 at * 5. Further, this court must defer to an ALJ's interpretation of a claimant's activities, if based on substantial evidence, when two reasonably plausible interpretations arise. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001).

The record described above supports the ALJ's finding that Mr. Hughes could perform volunteer work without interruption from his symptoms, ride a bike, and lift weights. Substantial evidence is "more than a mere scintilla, but less than a preponderance," *Bray*, 554 F.3d at 1222, and Mr. Hughes' activities cited by the ALJ are consistent with this standard. The ALJ's finding on the matter is therefore be affirmed.

### 2. Failure to Follow Treatment

The ALJ discussed Mr. Hughes' reluctance to take prescribed medications:

> In regard to the claimant's treatment, the record shows the claimant consistently has had an unwillingness to try medications because he reads the warnings and is convinced he either has or will have the listed side effects. Although it is understandable the claimant may be

> concerned, his reluctance to treat his symptoms suggests he believes
> the side effects are more disabling than the symptoms caused by his
> impairments. This would further suggest his symptoms are not as
> disabling as he alleges.

Tr. 21 (internal citations omitted).

Mr. Hughes asserts that this analysis mischaracterizes his behavior. Pl.'s Opening Br. 13. The record is replete with physician descriptions of Mr. Hughes' refusal to take prescribed blood pressure medication. Tr. 272, 278, 285, 287, 327, 336, 358, 341, 359, 364, 365, 372, 442, 533, 534, 547, 551, 555). Treating physician Dr. Booker repeatedly noted Mr. Hughes' preoccupation with perceived side effects, and encouraged Mr. Hughes to take all medications as prescribed. Tr. 289, 327, 329-331, 333, 356, 367, 368, 371, 441, 468-69, 474, 487, 517, 521-23, 526, 538. Dr. Booker also stated that Mr. Hughes had poor comprehension of the consequences of refusing prescribed blood pressure medication. Tr. 474.

The ALJ may cite a claimant's unwillingness to follow recommended treatment absent a compelling reason. *Smolen*, 80 F.3d at 1284. Such reasons include medication side effects less tolerable than the underlying condition. SSR 96-7p, "Evaluation of Symptoms in Disability Claims: Addressing the Credibility of an Individual's Statements," *available at* 1996 WL 374186 at *8. Mr. Hughes' anxiety regarding mundane side effects such as fatigue and constipation, while understandable, does not constitute such a compelling reason to refuse treatment. The ALJ's findings on the matter is therefore be affirmed.

### 3.  RFC Conclusion

Finally, Mr. Hughes asserts that the ALJ erroneously cited his own RFC conclusion in finding Mr. Hughes not credible. Pl.'s Opening Br. 9.

In discussing Mr. Hughes' RFC, the ALJ stated that his "medically determinable impairments could reasonably be expected to produce the alleged symptom; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to June 26, 2008, to the extent they are inconsistent with the [RFC] assessment for the reasons explained below." Tr. 20-21.

The ALJ must consider a claimant's symptom testimony in assessing his RFC. 20 C.F.R. § 404.945(a)(3); SSR 96-8p at *7, *available at* 1996 WL 374184. Dismissing a claimant's credibility because it is inconsistent with a conclusion that must itself address the claimant's credibility is circular reasoning. *Carlson v. Astrue*, 682 F. Supp.2d 1156, 1167 (D. Or. 2010); *see also Young v. Astrue*, No. 09-23-AC, *available at* 2010 WL 331781, at *5 (D. Or. Jan. 21, 2010).

However, Mr. Hughes misreads the ALJ's statement. The wording is admittedly confusing and not as clear as it should be. Nonetheless, it simply conveys the general concept that the ALJ's RFC assessment includes those statements by Mr. Hughes concerning his symptoms that the ALJ found credible and excludes his other statements that the ALJ found not credible. This court does not interpret this statement as the ALJ relying upon his own RFC assessment to find Mr. Hughes not credible. Instead, the ALJ's reasoning rejecting Mr. Hughes symptom testimony prior to June 26, 2008, is set forth in the paragraphs that follow the ALJ's introductory statement. Mr. Hughes therefore fails to establish error.

### C. Credibility Conclusion

In summary, the ALJ's credibility analysis is be affirmed.

### II. Lay Testimony

Mr. Hughes asserts that the ALJ erroneously evaluated lay testimony submitted by his girl

friend, Lorrayne Ellis. Pl.'s Opening Br. 8. The Commissioner concedes that the ALJ's analysis was flawed, and moves to remand the matter for further proceedings. Def.'s Br. 3.

### A.    Lay Testimony: Standards

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); *Molina*, ___ F.3d at ___, *available at* 2012 WL 1071637 at *7, *citing Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). The ALJ must provide germane reasons for rejecting lay testimony. *Molina*, ___ F.3d at ___, *available at* 2012 WL 1071637 at * 7, *citing Doddrill*, 12 F.3d at 919. However, the ALJ is not required to address each witness "on an individualized witness-by-witness basis," and may reject lay testimony predicated upon reports of a claimant properly found not credible. *Molina*, ___ F.3d at ___, *available at* 2012 WL 1071637 at *7, *citing Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

### B.    Analysis

The ALJ noted Ms. Ellis' testimony, and concluded that Ms. Ellis "is not knowledgeable in the medical and/or vocational fields and thus is unable to provide an objective critical assessment on how the claimant's impairments affect his overall abilities to perform basic work activities . . . ." Tr. 21. The ALJ therefore concluded that Ms. Ellis' testimony was "of limited value" in assessing Mr. Hughes' RFC. *Id.*

Lay witness testimony is valuable because it is based upon the witness's observation of a claimant's functioning. *Dodrill*, 12 F.3d at 918-919. The Ninth Circuit clearly instructs that an ALJ may not reject lay testimony simply because the lay witness is not "knowledgeable in the medical and/or vocational field." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). The ALJ's rejection

of Ms. Ellis's testimony is inconsistent with this standard and should not be affirmed.

The Commissioner concedes that the ALJ's reasoning is not germane to Ms. Ellis. Def.'s Br. 3. The matter is remanded for further proceedings for the reasons explained below.

## III.     Medical Evidence

Mr. Hughes asserts that the ALJ improperly considered letters submitted to the record by treating physician Michael Booker, M.D. Pl.'s Opening Br. 3-7.

### A.     Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830.

### B.     Analysis

Dr. Booker treated Mr. Hughes between March 3, 2004 (Tr. 365, 555) and February 12, 2009. Tr. 475. During this time he treated Mr. Hughes' high blood pressure, and performed follow-up care relating to Mr. Hughes' December 11, 2005, aortic valve repair surgery. As indicated above, Dr. Booker repeatedly and consistently discussed Mr. Hughes' reluctance to take various prescribed medications throughout this period. *Supra*, 8.

#### 1.     July 17, 2009, Letter

On July 17, 2009, Dr. Booker wrote a letter to the record, stating that he currently sees Mr. Hughes monthly, and that Mr. Hughes' anxiety and "intolerance" to various blood pressure

medications make control of his anxiety and blood pressure difficult. Tr. 577. Dr. Booker stated that Mr. Hughes anxiety and high blood pressure "[S]everely limit [Mr. Hughes'] ability to work. He would not be able to consistently work a full 8-hour day and would undoubtedly miss several days a month, at least two to three, due to his medical conditions." *Id.*

Mr. Hughes now challenges the ALJ's analysis of Dr. Booker's July 17, 2009, letter. Pl.'s Opening Br. 4-7.

The ALJ discussed Dr. Booker's July 17, 2009, letter. Tr. 21-22. The ALJ first noted Dr. Booker's report that Mr. Hughes was "intolerant" of many blood pressure medications, and that Dr. Booker opined Mr. Hughes could not consistently work an eight-hour day. Tr. 21. The ALJ wrote:

> Dr. Booker's expressed opinions are quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. In addition, he does not address the period of time prior to established onset date, but rather appears to be referring to the present. Accordingly, Dr. Bookers' opinions are given limited weight. Tr. 22.

The ALJ may reject physician opinions that are brief, conclusory, or inadequately supported by clinical notes and findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). As noted, Dr. Booker treated Mr. Hughs' high blood pressure throughout the period under review. Contrary to Mr. Hughes' present submission, Dr. Booker did not find Mr. Hughes intolerant of blood pressure medications. Instead, Dr. Booker repeatedly noted that Mr. Hughes refused blood pressure medications. *Supra*, 8. Dr. Booker also noted Mr. Hughes' reports of side effects, attempted to calibrate his blood pressure medications accordingly, and encouraged Mr. Hughes to continue taking prescribed medication. *Id.* For this reason, Mr. Hughes fails to establish that the ALJ erred in rejecting Dr. Booker's statement that Mr. Hughes was "intolerant" of blood pressure medications.

Finally, the ALJ's finding that Dr. Booker's July 17, 2009, letter "appears to be referring to the present" (Tr. 22) is based upon the record before the ALJ. Dr. Booker prefaced his statements regarding Mr. Hughes' limitations, saying he "currently" sees Mr. Hughes monthly. Tr. 577. Dr. Booker's July 17, 2009, letter referred to Mr. Hughes' December 11, 2005, aortic valve repair surgery, but made no statement that Mr. Hughes' limitations due to his anxiety and high blood pressure began prior to the June 26, 2008 date the ALJ found Mr. Hughes disabled. *Id.* The ALJ's reading of this letter, based upon the record before him, was therefore reasonable.

### 2. September 25, 2009, Letter

Dr. Booker submitted an additional letter to the record on September 25, 2009, after the ALJ's August 11, 2009, decision. Tr. 594. The Appeals Council accepted this letter into the record. Tr. 7. This court reviews evidence accepted by the Appeals Council. *Taylor v. Astrue*, 659 F.3d 1228, 1232 (9th Cir. 2011). The Commissioner does not address Mr. Hughes' argument pertaining to this evidence. Def.'s Br. 8-10.

In his September 25, 2009, letter Dr. Booker clearly stated he believed Mr. Hughes was disabled beginning on November 10, 2005, the date of his ruptured aneurism. Tr. 594. Dr. Booker explained that Mr. Hughes ruptured his aneurism as a consequence of his high blood pressure, and that he was deconditioned for months after his release from a post-surgical nursing facility. *Id.* Regarding Mr. Hughes' medication use and functional limitations, Dr. Booker wrote:

> Since his surgery and nursing home period he has consistently been taking at least three medications for blood pressure at all times. He has side effects to many medications, and continues to have side effects to medication, including fatigue. This has affected his ability to work. I do not believe he could have maintained gainful employment from 2005. *Id.*

13 - OPINION AND ORDER

The record does not support Dr. Booker's opinion, especially regarding his statement that Mr. Hughes was consistently taking his blood pressure medication "at all times." As discussed, Dr. Booker noted many instances where Mr. Hughes refused to take prescribed blood pressure medications. *Supra*, 8.

However, the reviewing court must remand the matter to the ALJ when evidence submitted to the Appeals Council concerns a claimant's onset date. *Taylor*, 659 F.3d at 1233. Dr. Booker's September 25, 2009, letter clearly addressed the onset of Mr. Hughes' disability. The ALJ must therefore consider the letter upon reconsideration.

## IV. The ALJ's Step Three Findings

The Commissioner concedes that the ALJ "did not properly evaluate whether Plaintiff's dissection, ongoing ischemia and hypertension, and renal insufficiency were severe enough to meet or medically equal the listing criteria" at step three in the sequential proceedings. Def.'s Br. 3. However, the Commissioner provides no further explanation of his position and Mr. Hughes does not challenge or address the ALJ's step three findings.

At step three, the ALJ must determine whether a claimant's medically determinable impairment "meets" or "equals" associated criteria in the Commissioner's regulations. 20 C.F.R. § 404.1520(a)(4)(iii). This determination must be adequately explained. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

The ALJ presently stated that he "considered the claimant's severe impairments" at step three, and found that they "do not meet or medically equal the requisite criteria for any listed impairments as set for in the listings . . . ." Tr. 19. This one-sentence analysis is insufficient under

the standard articulated in *Marcia*. However, because Mr. Hughes makes no assertion of error, or explanation of the manner in which the record establishes disability at step three in the sequential proceedings, further analysis is presently unnecessary.

## REMAND

The ALJ erroneously evaluated Ms. Ellis' testimony, and failed to apply the proper legal standards at step three in the sequential analysis.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award

of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003), *citing Bunnell v. Sullivan*, 947 F2d 871, 348 (9th Cir. 2003) (en banc). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

It is not clear from the record that crediting the omitted evidence will establish that Mr. Hughes is disabled. On March 14, 2006, Ms. Ellis stated that Mr. Hughes was limited in lifting more than fifty pounds, and could not walk more than three or four blocks. Tr. 155. Later, on October 27, 2006, she stated he could lift no more than fifteen pounds and his ability to walk "varies." Tr. 194. In an undated letter submitted to the record Ms. Ellis stated that Mr. Hughes has experienced shortness of breath since his December 2005 aortic valve surgery (Tr. 223), but is "improving steadily." Tr. 223. Mr. Hughes' counsel did not ask the vocational expert to consider work-related limitations stemming from this testimony. Tr. 70-71. Therefore, this court cannot now determine whether the ALJ's erroneous evaluation of Ms. Ellis' testimony would direct a finding of disability.

In such circumstances, outstanding issues must be resolved before a determination that an award of benefits is inappropriate. *Luna*, 623 F.3d at 1035. Accordingly, the court declines to credit the improperly omitted testimony. *Id.* The matter must be remanded for further proceedings so that the ALJ may address Ms. Ellis' testimony, make proper step three findings, and address Dr. Booker's September 25, 2009, letter submitted to the Appeals Council. If necessary, the ALJ must then make a modified RFC determination, and make adequate step four and five findings incorporating any revised findings.

///

## CONCLUSION

For the reasons above, the Commissioner's decision is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the further proceedings.

IT IS SO ORDERED.

Dated this 2nd day of May, 2012.

_____
Paul Papak
United States Magistrate Judge